UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CLARENCE E. BALDWIN,

*Plaintiff*,

v.

Civil Action No. 16-1365 (RDM)

SMALL BUSINESS ADMINISTRATION,

*Defendant.*

## MEMORANDUM OPINION

*Pro se* complaints are "'held to less stringent [pleading] standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). At some point, however, the Court cannot proceed with a case in the absence of a properly framed legal dispute. Here, the plaintiff, Clarence Baldwin, filed a FOIA action seeking records that the defendant, the Small Business Administration ("SBA"), allegedly failed to release in response to Baldwin's March 1, 2016, and May 18, 2016, FOIA requests. Baldwin, however, faced a substantial, threshold difficulty with his claim: The FOIA requests that he attached to his complaint did not request agency records but, rather, simply posed questions for the SBA to answer, see Dkt. 1 at 4–5 & 8–9. Because "FOIA [does not] require[] an agency to answer questions disguised as . . . FOIA request[s], . . . or to create documents . . . in response to an individual's request for information," *Hudgins v. IRS*, 620 F. Supp. 18, 21 (D.D.C. 1985) (citation omitted), that flaw ordinarily would have provided ample basis to dispose of the case. The SBA would have been justified in declining to respond to Baldwin's interrogatories, and it would have been justified in seeking dismissal of his complaint on the ground that an agency's failure to respond to interrogatories in not actionable under FOIA. *See Hall v. Fed. Bureau of*

*Prisons*, 132 F. Supp. 3d 60, 67 (D.D.C. 2015); *Jean-Pierre v. Fed. Bureau of Prisons*, 880 F. Supp. 2d 95, 104 (D.D.C. 2012); *Adams v. FBI*, 572 F. Supp. 2d 65, 68 (D.D.C. 2008).

The SBA, however, went beyond its legal obligation and endeavored to provide Baldwin with records that, in substance, responded to his requests. After receiving his interrogatories, Laura Magere, Chief of the SBA's FOIA unit, contacted Baldwin and explained to him that "FOIA does not require federal agencies to respond to questions" and that FOIA allows members of the public "to submit written requests for . . . release of agency records." Dkt. 11-2 at 3 (Magere Decl. ¶ 5). Magere subsequently spoke with Baldwin by telephone on several occasions and, after repeatedly asking that he submit a request for specific records, Magere sent Baldwin an email identifying the records that she believed he was seeking. *Id.* (Magere Decl. ¶¶ 6-7). Baldwin concurred, thanking Magere for her assistance. *Id.* (Magere Decl. ¶ 7). According to Magere, the records identified in her email were produced to Baldwin on July 22, 2016. *Id.* at 4 (Magere Decl. ¶ 8). Another SBA attorney confirmed that she processed the request, redacted certain personal and confidential information pursuant to FOIA Exemptions 4, 5 and 6, and released 327 pages of records to Baldwin on July 22. Dkt. 11-3 at 3–4 (Hulme Decl. ¶¶ 8-10).

Because the 327 pages of records were released approximately three weeks after Baldwin brought this suit, because his complaint attached (and thus incorporated) his interrogatories, and because it did not refer to the requests for records set forth in Magere's email, it was unclear which, if any, agency records Baldwin sought to compel the SBA to release. *See* Dkt. 1. That lack of clarity was heightened, moreover, when Baldwin contacted counsel for the SBA in August 2016, indicating that he had received the production from the SBA but did not believe that it "contain[ed] all of the information requested." Dkt. 9 at 2.

In an effort to clarify matters, counsel for the SBA requested that Baldwin "send to the SBA a list of information [he] believed to be missing from the production," and he agreed to do so. *Id.* In order to provide time for Baldwin to identify any such omissions, the SBA sought an extension of time to respond to the complaint, Dkts. 9 & 10. The Court granted the SBA's motion for an extension and ordered Baldwin to "provide [the SBA] with notice of the documents he believes are missing from the productions [the SBA] has provided so far." Minute Order, August 30, 2016.

Baldwin failed to comply with that order, prompting the SBA to move to dismiss the complaint for lack of prosecution. Dkt. 11. In response, the Court ordered that Baldwin "either [1] provide a list of the records he [contends are] missing from the productions [the SBA had] provided so far or [2] file a brief in opposition to [the SBA's] Motion to Dismiss for Lack of Prosecution." Dkt. 12 at 2. The Court set a deadline of November 1, 2016, for Baldwin to make this submission and cautioned that, if he failed to file a timely response, the Court might treat the SBA's motion as conceded and might "dismiss the action for failure to prosecute." *Id.*

Baldwin subsequently sought, and the Court granted, a seven-day extension of time to provide the list of records or to oppose the SBA's motion to dismiss for failure to prosecute. Minute Order, November 7, 2016. At the same time, the Court once again cautioned Baldwin that "[f]ailure to provide the list of missing records or to show cause for failure to do so may result in dismissal of this action for failure to prosecute." *Id.* With this extension, Baldwin's response was due on or before November 10, 2016. *Id.*

November 10, 2016, came and went without a response to the Court's orders. Finally, almost two weeks later, Baldwin filed an "opposition" to the SBA's motion on November 23, 2016. That filing, however, neither identified the records that Baldwin contends have not been

3

produced nor explained why the case should not be dismissed for failure to prosecute. According to Baldwin's response, "[t]he list of records that are missing from production" is as follows:

> 1). . . . How many Loan Specialist[s] were hired permanently through SBA including contractors within the last 24 months (JANUARY 2014-JANUARY 2016)
>
> 2.) How many Loan Specialist[s] were at the production rate of 2.75 times from November 2015 to January 2016? . . . .
>
> 3.) How many [L]oan Specialists were transferred to three supervisors within 6 months of employment at SBA National Guaranty Purchase Center in Herndon, VA? . . . .
>
> 4.) Did Yvonne Singh have three Supervisors? What were their names, and was he/she terminated? . . . .
>
> 5.) How many Loan Specialists had disciplinary actions [im]posed on them for low productivity in the last 24 months from January 2014-January 2016 and their names?
>
> 6.)(a.) How many Loan Specialist production rates went up after being transferred to Ms. Linda Petty for the 18 months, June 2014-January 2016?
>
> 6.)(b.) When Loan Specialist[s] were transferred to Ms. Linda Petty how many Loan Specialist production rates went up on the chart? . . . .
>
> 19.)(b.) What are the non-supervisors names and how many? . . . .
>
> 19.)(c.) How many were acting as loan approvers?
>
> 20.) How many SBA employees [from April 2014-PRESENT . . . have left for other employment possibilities while working at the NGPC located in Herndon, VA?

Dkt. 14 at 3–4.

This, of course, is not a list of "records," and it does nothing to clarify whether there are any agency "records" that Baldwin sought or that Magere agreed on behalf of the SBA to

4

provide, which the agency has failed to release. The Court, accordingly, is left where it started. Absent some clarification, Baldwin's complaint can only be read to seek to compel the SBA to answer questions, which FOIA does not require. Yet, rather than disavow this reading of his complaint, Baldwin's response appears to confirm that he seeks answers, and not records. To the extent that is what he seeks, his claim is meritless. To the extent Baldwin does seek agency records, however, he has now twice ignored the Court's direction that he tell the SBA—and the Court—what records he contends the SBA omitted from its July 22, 2016, production. Without that clarification, neither the Court nor the SBA has any idea what agency records are allegedly at issue or in what way Baldwin alleges the SBA has failed to comply with FOIA.

Baldwin does identify two groups of agency records in his opposition brief, but his request for those records is not properly before the Court. In a section of his brief captioned "New Questions," Baldwin refers to his requests for "all emails from Ms. Debbie Lester . . . to Mr. Clarence Baldwin . . . from (date of hire) May 4, 2015 [to] March 1, 2016 (date of resignation)," and for "all emails from Ms. Debbie Lester to Mr. John Brown from November 4, 2015 [to] March 1, 2016 (date of resignation) in reference to Mr. Clarence Baldwin recommendation for termination." Dkt. 14 at 4. Unlike Baldwin's interrogatories, these are, in fact, requests for records, and thus the requests fall within the ambit of FOIA. The problem is that, as Baldwin acknowledges, these requests were not made until November 22, 2016, *id.*— many months after Baldwin brought this suit, many weeks after the SBA moved to dismiss for lack of prosecution, and just the day before Baldwin filed his (untimely) opposition. The records that Baldwin now identifies, moreover, were not among those that Magere and Baldwin previously agreed the SBA would produce. See Dkt. 11-2 at 10–13. It goes without saying that

the complaint, which was filed in June 2016, cannot be construed—even liberally—to challenge the SBA's failure to respond to a FOIA request made in November 2016.

The question, then, is what to do. The SBA has asked that the Court dismiss the case for failure to prosecute. In the typical case, that is a sanction that is imposed in the face of "egregious conduct by particularly dilatory plaintiffs, after less dire alternatives have been tried without success." *Peterson v. Archstone Communities LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011). There is no doubt that Baldwin missed deadlines and, to date, has failed to identify which, if any, records he contends the SBA has failed to produce. It is less clear, however, that he has done so deliberately, in bad faith, or to gain a tactical advantage. *See Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000). Nor is it evident that the SBA has suffered any (actual or presumed) prejudice as a result of Baldwin's failure meaningfully to respond to the Court's orders. *Id.*; *Peterson*, 637 F.3d at 418; *Shea v. Donohoe Const. Co., Inc.*, 795 F.2d 1071, 1075 (D.C. Cir. 1986). Most reasonably construed, the record does not suggest that Baldwin has engaged in "egregious" misconduct but, rather, that he has declined the Court's (and the SBA's) invitation to cast his *pro se* complaint in a light that might overcome an otherwise dispositive infirmity.

As a result, the Court concludes that Federal Rule of Civil Procedure 12(b)(6) provides the more appropriate vehicle for addressing the deficiencies in the complaint and Baldwin's adherence to an untenable theory of his case. Although the SBA's motion is not premised on this rule, the D.C. Circuit has recognized that a district court may *sua sponte* dismiss a complaint under Rule 12(b)(6) where "it is patently obvious" that the plaintiff cannot "prevail[] on the facts alleged in his complaint." *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990). That rule applies, moreover, "[e]ven under the liberal *pro se* standard." *Strunk v. Obama*,

880 F. Supp. 2d 1, 3 (D.D.C. 2011); *see also Perry v. Discover Bank*, 514 F. Supp. 2d 94, 95 (D.D.C. 2007). And, in the present context it is, if anything, an overstatement to refer to the Court's disposition as *sua sponte*: Baldwin was on clear notice from the Court and the SBA that, in order to proceed, he would need to identify particular agency records that he alleges the SBA failed to release; he was provided ample opportunity to do so; and he declined that invitation. Cast in this light, all that is *sua sponte* about the Court's disposition is the *rule* relied upon; Baldwin had every opportunity to dispute the *substantive premise* of the SBA's motion.

Despite opportunities to argue otherwise, Baldwin has declined to disavow what appears evident on the face of his complaint—that is, that he seeks to compel the SBA to answer questions and not to release agency records. Understood in this manner, the complaint fails to state a claim under any plausible reading of FOIA. *See Hall*, 132 F. Supp. 3d at 67; *Jean-Pierre*, 880 F. Supp. 2d at 104; *Adams*, 572 F. Supp. 2d at 68; *Hudgins*, 620 F. Supp. at 21. As a result, Baldwin "'cannot possibly win relief,'" *Baker*, 916 F.2d at 726 (citation omitted), on the only claim that he is prepared to press. *Sua sponte* dismissal is therefore appropriate.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 6, 2017